In the Matter of the Arbitration between Bernard Shapiro et al., Individually and as Liquidating Partners of Shapiro & Sons, Appellants, and Sol A. Rosenblatt et al., Respondents.

First Department, June 30, 1953.

*Sidney O. Raphael* of counsel (*Francis X. Conlon* and *Sidney Z. Searles* with him on the brief; *Raphael & Conlon,* attorneys), for appellants.

*Selig J. Levitan* of counsel (*Robert Zuckerman* with him on the brief; *Javits & Javits,* attorneys), for Sol A. Rosenblatt, respondent.

*Emil Schlesinger* of counsel (*Max Bloom* and *Gerard M. Weisberg* with him on the brief; *Schlesinger & Bloom,* attorneys), for Joint Board of Cloak, Suit, Skirt and Reefer Makers' Union, respondent.

CALLAHAN, J.   The petitioners are copartners engaged in the manufacture of women's apparel in the city of New York for over sixty years.   They claim that the partnership was actually and legally dissolved in January, 1953, and notice sent to the respondent union.

The subject of the controversy is the right to arbitration of disputes between the parties under two collective bargaining agreements, viz., (1) an industry-wide agreement, and (2) a supplementary agreement dated January 2, 1952.   The second agreement relates to certain specific partnership activities. Some of the complaints, which are the subject of the proposed arbitration, deal with these activities.   Other complaints for arbitration are based on alleged violations of the basic contract.

After covering the rights and obligations of the parties as to specific matters, the supplementary agreement provides:

" 4.   The parties agree that the terms and conditions contained in the collective agreement entered into between the Industrial Council of Cloak, Suit and Skirt Manufacturers, Inc. and the Union on June 15, 1951, as of June 11, 1951, shall continue to remain in full force and effect until the expiration date thereof. This supplemental agreement shall in no way, and is not intended to modify, change or amend any of the provisions contained therein.

" 5.   For the purpose of this agreement, it is understood that should the partnership be dissolved and the business discontinued, the partners should not be individually obligated under this agreement.   Should the firm, however, be continued by one

or more partners, the new firm should assume the obligations of this agreement. However, after dissolution or liquidation of their business, if, at any time during the period of this agreement, any or all of the partners resume business either as officers of a corporation, directly or indirectly, or individually, the new firm shall be obligated to perform all of the provisions of this agreement."

The first or basic agreement contained a provision that subsidiary, auxiliary and affiliated firms were to be deemed bound by the agreement. It also provided for continuance of liability after dissolution during the contract period, and for assumption of the contractual obligations by new firms joined by employer members. These clauses, however, were modified by the 5th clause of the agreement of January, 1952, at least as to specific matters covered in the supplemental contract.

At the time the supplementary agreement was made, it is conceded that the petitioners had an affiliate, Miro, Inc., also known as Empire Coat Corporation, located in Albany, New York, which acted as contractor for them. The petitioners have since organized " Miss New Yorker Coats, Inc.," and " Cohoes Garment Corporation ", which are also said to be subsidiary or affiliated enterprises controlled or operated by them. The respondent contends that the original partnership of the petitioners continues to do business through these agencies.

The present proceedings for arbitration, however, were directed to the petitioners as members of the original partnership, and we have no question presented as to the obligation of any subsidiaries or any new firm to arbitrate disputes under either contract aforesaid.

Thus, there appear to be issues of fact and law, which must be resolved by the court, before it can be determined whether there is a binding contract to arbitrate those complaints based on breach of the supplementary agreement. While complaints based solely on breaches of the basic agreement would appear to be arbitrable, those based on breaches of the supplementary agreement would not seem arbitrable, if there has been dissolution of the partnership in good faith. The preliminary issue would be whether the contracting partnership was, in fact and in law, dissolved. Its members were personally released under the terms of the supplementary agreement as to any complaints based solely on breaches of that agreement. Actual dissolution in good faith will relieve an entity of some contractual obligations under a collective bargaining agreement by operation of

law (*Matter of Kosoff* ["*Jones*"], 276 App. Div. 621, affd. 303 N. Y. 663). Here there was a specific contractual provision as to personal exemption on dissolution. As noted, we are not passing upon the obligations of subsidiaries or affiliates.

The *Kosoff* case (*supra*) involved a corporate employer, and the dispute related to charges of a lockout. We cannot say at this time that these facts make the rule of law announced in that case inapplicable. In any event, we have the escape clause in the supplementary agreement between these parties. Of course, if there has been no dissolution of the contracting partnership, and it continues to operate in fact or in law, the escape clause would be inapplicable, and arbitration of complaints arising under the second contract would also be required.

The petitioners also attempt to defeat arbitration upon other grounds, which we find untenable.

The order appealed from should be modified in accordance with this opinion so as to provide for arbitration of disputes or grievances arising under the basic contract and direction of a trial as to the existence of an agreement to arbitrate dependent on continuance of the partnership so as to require arbitration of controversies relating to the supplementary agreement. Settle order.

BREITEL, J. (dissenting). The issues tendered in arbitration in this case include whether in fact the partnership has been dissolved, conceding that the partners went through the form of a purported dissolution. This is solely a question of fact to be determined in the arbitration, as the parties by solemn agreement had provided. The situation was different in *Matter of Kosoff* ("*Jones*") (276 App. Div. 621, affd. 303 N. Y. 663) for there the principal corporation had dissolved. As a matter of law, and as a matter of public policy, an incorporated body may not survive its dissolution, except for limited purposes. That is because the corporation is a strictly statutory artificial entity. But here the claim is that the partnership has never ceased to do business, and there is no legal bar to its continuance. The purported dissolution may well be, as claimed by the union, a form of convenience adopted to deceive but not to effect what it appears to accomplish.

The facts here make this a particularly substantial contention, since the partnership, before the purported dissolution, used the very same corporations for the contracting of its merchandise that it is claimed are still being used by the same individuals constituting the partnership.

Moreover, the agreement provisions relied on by the majority opinion specifically provided that if the firm " be continued by one or more partners, the new firm should assume the obliga-- tions of this agreement." The union is seeking arbitration against the partners either as the old firm, unchanged, or against the new firm with the same partners. The dissolution then resolves itself down to a fine metaphysical line without difference in effect. In *Matter of Kosoff* (" *Jones* ") (*supra*) none of this was possible, because a corporation dissolved is a corporation dissolved, statute law and public policy not permitting it to survive its formal dissolution or continue its existence without formal reconstitution.

It should be emphasized too that the filing of a certificate of dissolution by a partnership does not accomplish a dissolution. It constitutes simply the filing of information for public record. (Penal Law, § 440-b, subd. 7.)

The issue may be put in another and perhaps simpler way. The issues in this arbitration turn not on whether a successor firm has violated an undertaking, but whether in fact the firm which bound itself carries on or not.

Section 1450 of the Civil Practice Act authorizes trial of the issue of the making of a contract of arbitration. That involves nothing more than whether there is a valid agreement to arbitrate on the part of the partnership. About that there is no question. There is concededly an agreement to arbitrate on the part of this partnership with reference to acts *charged to the partnership,* and not to any other entity or entities. The effect of the majority view is to submit to a court for trial, in violation of the arbitration agreement, the issues whether in fact the partnership dissolved and whether it is doing the acts charged or whether some one else is doing the acts charged.

It is notable that the issue on which the case now turns was not directly raised or briefed. A question-begging point was made on whether the partnership having gone through the form of dissolution had *terminated* the agreement to arbitrate.

The order should be affirmed and the parties directed to proceed to arbitration.

Dore, J. P., and Cohn, J., concur with Callahan, J.; Breitel, J., dissents and votes to affirm in opinion, in which Bergan, J., concurs.

Order modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.